FILED
02/20/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2024 Session

# SANDI DAWN CUNNINGHAM ET AL. v. BRYAN TRUCK LINE, INC. ET AL.

**Appeal from the Circuit Court for Dickson County**
**No. 22-CC-2017-CV-80    Roy B. Morgan, Jr., Senior Judge**

_____

**No. M2023-00353-COA-R3-CV**

_____

Following a mechanical failure, an employee parked his tractor-trailer on the shoulder of an interstate highway. As result of delays in the repair of the tractor-trailer, the vehicle had been on the shoulder for at least seven hours when a driver crashed into the parked tractor-trailer. Two of the driver's passengers, the driver's son and his son's fiancée, died. The estates of the deceased and their shared minor child (the Plaintiffs) filed a tort suit against the driver and also against the driver of the tractor-trailer and his trucking company employer. The trial court granted summary judgment to the defendant tractor-trailer driver and his employer. In doing this, the trial court based its decision upon what it termed a special rule of Tennessee tort law called the *Carney* Rule, a reference to this court's decision in *Carney v. Goodman*, 270 S.W.2d 572 (Tenn. Ct. App. 1954). In reaching this conclusion, the trial court relied upon an understanding of the *Carney* decision set forth in several federal court decisions. The Plaintiffs argue the trial court erred in its application of the *Carney* Rule. We agree and reverse the trial court's decision, remanding for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

JEFFREY USMAN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

David R. Grimmett, Franklin, Tennessee, for the appellants, Sandi Dawn Cunningham and Mackenzie I.[1]

Karl M. Braun and Daniel D. Derner, Nashville, Tennessee, for the appellees, Bryan

_____

[1] It is the policy of this Court to protect the privacy of children by avoiding the use of full names.

Truck Line, Inc., and James D. Jones.[2]

**OPINION**

I.

On June 18, 2016, James Jones, an employee of Bryan Truck Line, left Memphis, Tennessee, in route to deliver automotive parts to Columbia City, Indiana. Mr. Jones maintains that he fully inspected the tractor-trailer that he was driving before leaving Memphis and found no problems or defects. The parties agree that Mr. Jones traveled on Interstate 40 to Dickson County without incident.

Mr. Jones asserts that, at around midnight, an unavoidable piece of tire tread recap appeared in front of him in the middle of I-40. He collided with the tread, and, according to Mr. Jones, the tractor-trailer immediately signaled that the tires were rapidly losing air pressure. Mr. Jones pulled over the tractor-trailer and parked it on the shoulder. He recalls parking "at least 30 inches" away from the closest eastbound travel lane. The Plaintiffs in the present case assert that no such tread strike occurred and the tractor-trailer stopped for another reason.

Shortly after parking on the shoulder of I-40 in Dickson County, Mr. Jones called Bryan Truck Line. He informed the company of the situation and requested mechanical assistance. The company responded by sending a mobile mechanic at approximately 3:00 on the morning of June 19, 2016. The mechanic left half an hour later upon realizing that "he did not have the right equipment." Mr. Jones and Bryan Truck Line communicated about "every hour to an hour and a half." It is undisputed that the company did not provide additional help before the events that gave rise to this lawsuit, meaning Mr. Jones and his tractor-trailer were stranded on the shoulder of I-40 for at least seven hours.

Between 7 and 8 am, David I.[3] was driving on I-40. The parties agree that the morning of June 19th was clear and sunny, and that the roadway was dry. Mr. I. was accompanied by three passengers: Mr. I.'s son, Cameron I.; his son's fiancée, Shelby Rae Cox; and a man named Lawrence Reddick. The group had spent the prior night camping. It is undisputed that Mr. I. had smoked marijuana the prior night. The parties disagree, however, as to whether he was still intoxicated at the time of the accident that occurred that morning.

---

[2] David I. did not participate in this appeal.

[3] Although David I. is an adult, we use an initial in place of his last name because he and a minor involved in this case share the same last name.

Around 7:55 a.m., a bumblebee flew into Mr. I.'s truck. The bumblebee distracted Mr. I. before flying into the air vent. Once it reemerged, Mr. I. smashed the bumblebee and threw it out the window. During this episode, however, Mr. I.'s car "veered across the right eastbound lane of the interstate, crossed over the right fog line and the 12-inch rumble strip beyond it, and entered the emergency shoulder lane." When Mr. I.'s gaze returned to the road and he saw the tractor-trailer it was too late to avoid the accident. His truck collided with the tractor-trailer, "careen[ed] . . . through the grass alongside the interstate and finally crashed into [the] tree line." Cameron died on impact. Shelby died shortly after being airlifted from the crash site. The two shared a child, Mackenzie I., who lost both of her parents.

Sandi Cunningham, individually and serving as the administratrix of both estates as well as the daughter Mackenzie's legal guardian (collectively the Plaintiffs), sued Mr. Jones, Bryan Truck Line, and Mr. I. in Dickson County Circuit Court.[4] The Plaintiffs asserted that Cameron and Shelby died because of negligence and recklessness. Regarding the trucking company and its employee Mr. Jones, the Plaintiffs asserted negligence in connection with the tractor-trailer remaining on the shoulder for at least seven hours. The Plaintiffs also brought a negligence per se claim, asserting that Mr. Jones failed to comply with mandatory safety regulations in connection with his failure to properly place warning triangles behind his vehicle. Regarding Bryan Truck Line, the Plaintiffs also brought negligent supervision, training, and entrustment claims, and they additionally claimed that the company should be liable for Mr. Jones's actions based on his status as the company's employee. Bryan Truck Line and Mr. Jones raised several affirmative defenses, including comparative fault and "superseding intervening cause."

Mr. Jones's actions after pulling the tractor-trailer onto the shoulder are in dispute as are the geographic features near the accident site. While both parties agree that Mr. Jones placed some warning triangles behind his tractor-trailer, Plaintiffs allege that Mr. Jones deviated from mandatory highway safety rules by placing less than the required three warning triangles behind his vehicle. Mr. Jones disagrees. He maintains that he followed all required regulations, placed three warning triangles behind his vehicle at distances of "approximately 10 feet . . . approximately 100 feet . . . [and] approximately 200 feet" respectively. There is also disagreement as to the geographic features of I-40 leading up to where the tractor-trailer was parked, with disputes over whether the roadway was relatively straight or featured a significant curvature.

---

[4] Mr. I. was indicted for criminal offenses regarding the same accident. A jury eventually convicted him "for two counts of vehicular homicide for the reckless killing of Cameron Taylor [I.] and Shelby Rae Cox while intoxicated; one count of vehicular assault by operation of a motor vehicle while intoxicated; and one count of reckless endangerment by operation of a motor vehicle while intoxicated." The record reflects that, after his conviction, Mr. I. reached a settlement with the Plaintiffs and did not participate in the summary judgment proceedings. The Plaintiffs dispute that Mr. I. was intoxicated at the time of the accident and asserted before the trial court that, because they were not parties to the criminal proceeding, they are not bound by the jury's conclusion in the criminal case.

Mr. Jones and Bryan Truck Line (the Defendants) filed a motion for summary judgment accompanied by a statement of undisputed material facts. In their motion for summary judgment, the Defendants argued, among other things, that neither Mr. Jones nor Bryan Truck Line were a proximate cause of the June 19, 2016 accident. They emphasized Mr. I.'s role in the accident, observing that he had acted negligently by driving under the influence. Regarding proximate causation, the Defendants invoked what they called the "*Carney* Rule," in reference to this court's decision in *Carney v. Goodman*, 270 S.W.2d 572 (Tenn. Ct. App. 1954), which they deemed "a special rule concerning proximate causation in standing vehicle cases" under Tennessee tort law. In support of their understanding of the *Carney* Rule, the Defendants relied upon the application of the *Carney* Rule by the federal courts. In accordance with these federal court decisions, the Defendants insisted that the relevant standard for assessing proximate cause is whether a reasonable driver in Mr. I.'s situation *could have seen* the tractor-trailer far enough in advance to take steps to avoid a collision. They asserted that the undisputed facts in the record sufficiently established that the tractor-trailer was visible from at least a mile away. Accordingly, the Defendants argued that under the *Carney* Rule they cannot, as a matter of law, be liable for any actions in connection with the tractor-trailer being on the shoulder of the road because Mr. I. could have seen the tractor-trailer and if Mr. I. had seen the tractor-trailer, then he could have avoided the accident.

The Plaintiffs disagreed. Among other things, the Plaintiffs argued that the federal court cases cited by the Defendants misinterpret *Carney*. According to the Plaintiffs, the Defendants could still be liable for negligence under *Carney* so long as Mr. I. did not *actually see* the tractor-trailer in time to avoid it. For purposes of the summary judgment proceedings, the parties agreed that Mr. I. did not actually see the tractor-trailer until it was too late to avoid a collision. Furthermore, the Defendants did not dispute the Plaintiffs' contention that Mr. I. was distracted by a bee flying into his vehicle and that it was this bee that prevented Mr. I. from seeing the parked tractor-trailer before it was too late to avoid the accident. The parties also agreed that if Mr. I. had "noticed the [tractor-trailer] in sufficient time to adjust course prior to reaching the [tractor-trailer], he would have done so." The Plaintiffs disputed the Defendants' contention that Mr. I. was intoxicated at the time of the accident. They also asserted that the sun had been shining in Mr. I.'s eyes and that there was a significant curve in the road shortly before the spot where the accident occurred.

In reaching its conclusion, the trial court observed that the parties' dispute centered upon the application of *Carney* to the facts presented. The trial court ultimately sided with the Defendants' view of how *Carney* operates based upon the federal courts' understanding of this 1954 Tennessee Court of Appeals decision. In doing so, the trial court stated:

The Court [] understands Plaintiffs' assertion that the federal courts misinterpreted the rule set forth in *Carney v. Goodman*. Bearing that in mind, the critical issue is whether the court should accept the federal courts' decisions for what they are and agree with the Moving Defendants that those cases accurately state Tennessee law; or, alternatively, whether the Court should just ignore those rulings and accept Plaintiffs' proposition that they're just wrong, and that the federal courts misinterpreted Tennessee law. Ultimately, that's what this case amounts to....

Indeed, this case is a tragedy. However, one's own personal feelings regarding what may or may not be "dangerous" is not what rules in this case. Without any other authority being cited to the contrary, the Court finds that the four federal cases relied upon by Moving Defendants are not based upon a misinterpretation of Tennessee law.

With this understanding of Tennessee tort law, the trial court concluded that

[e]ven when viewing the facts in a light most favorable to Plaintiffs, the Court finds that this accident was not reasonably foreseeable as a matter of law. In light of the circumstances leading up to the time of the accident, the Court finds that it was not a reasonably foreseeable probability that an approaching motorist would fail to see the Freightliner, the four-way flashers, and the warning triangles, which were all clearly visible from a mile away, and then leave two free lanes of traffic, drive at least 30 inches into the emergency shoulder lane, and ultimately collide with the rear of the Freightliner. Pursuant to this holding, Plaintiffs' other negligence claims against Moving Defendants must also fail, as Plaintiffs' have failed to establish that Moving Defendants were a proximate cause of this accident. While Plaintiffs have raised a variety of arguments regarding whether Moving Defendants breached their duty of reasonable care, those issues are unnecessary to consider in light of the Court's holding.

Reaching its decision in accord with the Defendants' understanding of the *Carney* Rule, the trial court concluded that no material facts were disputed and held "that, as matter of Tennessee law, the accident was not a reasonably foreseeable probability under the circumstances." The trial court, therefore, granted the Defendants' motion for summary judgment.

Plaintiffs appeal the grant of summary judgment. The Plaintiffs challenge the trial court's conclusion that summary judgment for the Defendants is warranted. The Plaintiffs maintain that Mr. I.'s failure to actually see the vehicle is critical, and in doing so challenge the federal courts' interpretations of *Carney*. The Defendants argue that the trial court properly applied the *Carney* Rule, and, accordingly, properly granted them

summary judgment.

II.

This appeal stems from a grant of summary judgment. This court "review[s] a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We must "view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Rye*, 477 S.W.3d at 250.

III.

The trial court decided this case on the narrow ground that the Defendants were not a proximate cause of the accident as a matter of law due to the application of the so-called "*Carney* rule," as articulated in federal court cases seeking to apply this court's decision in *Carney v. Goodman*, 270 S.W.2d 572 (Tenn. Ct. App. 1954). The federal courts have explained their understanding of the *Carney* rule as a carve-out or "special rule" specific to tort suits involving a standing vehicle that is outside the otherwise applicable rules regarding proximate causation in Tennessee tort law. *See Kellner v. Budget Car and Truck Rental, Inc.*, 359 F.3d 399, 403, 407 (6th Cir. 2004) (referring to *Carney* as a "special rule" and contrasting the "general rule" of proximate cause with the "specific rule [in *Carney*] for determining proximate cause and foreseeability in claims involving standing vehicles"); *Underwood v. Fitzgerald*, No. 3:04-0680, 2005 WL 2837388, at *3 (M.D. Tenn. Oct. 27, 2005) (citing to *Kellner* and referring to *Carney* as a "special rule"); *Humphrey v. Yobonta*, No. 3:19-cv-00782, 2021 WL 780731, at *5 (M.D. Tenn. March 1, 2021) (citing to *Kellner* and explaining "the *Carney* court adopted a special rule in standing vehicle cases"); *Hamrick v. James*, 599 F.Supp.3d 720, 724 (E.D. Tenn. 2022) (citing to *Carney* and *Kellner* asserting that Tennessee has "adopted special rules of proximate causation in cases involving stationary vehicles.").

The trial court highlighted the centrality of this "special rule" to its decision:

> [T]he critical issue is whether the court should accept the federal courts' decisions for what they are and agree with the Moving Defendants that those cases accurately state Tennessee law; or, alternatively, whether the Court should just ignore those rulings and accept Plaintiffs' proposition that they're just wrong, and that the federal courts misinterpreted Tennessee

law. Ultimately, that's what this case amounts to.

With due respect to our federal brethren, their understanding of this court's decision in *Carney v. Goodman*, upon which the trial court relied, is in error. Accordingly, the trial court erred in applying the rule as articulated by the federal courts.

*Carney v. Goodman* concerned an accident involving three vehicles. *Carney*, 270 S.W.2d at 573. The first vehicle involved in the accident, an automobile driven by Mrs. Delia Stamper, was negligently parked partially blocking the road. *Id.* A truck owned by Warren Brothers Road Company and driven by Douglas Goodman, the second vehicle involved, came upon Mrs. Stamper's negligently parked automobile and stopped to avoid hitting it. *Id.* The third vehicle involved in the accident, a truck owned by the Ormes Roofing company and driven by Ed Atkinson, had been driving about 150 to 200 feet behind the Warren Brothers truck for a few miles. *Id.* The driver of the third vehicle, Atkinson, however, had looked down or away, and when he looked back up, the Warren Brothers truck had stopped. *Id.* At this point, there was only about 50 to 75 feet between the two vehicles. *Id.* Unable to get around the stopped vehicle without driving into oncoming traffic, Atkinson "jammed on his brakes" but skidded due to the slick condition of the road, hitting the Warren Brothers truck. *Id.* The accident severely injured a passenger in Atkinson's vehicle. *Id.* at 574.

The passenger brought suit against the owners and drivers of the first and second vehicles. *Id.* at 573. At the close of the plaintiff's proof, the trial judge directed a verdict for the defendants. *Id.* Upon review, this court held that Goodman, the driver of the second vehicle, was not negligent as a matter of law because when he came upon the first vehicle in the road he "was bound to stop, and did stop without a collision." *Id.* at 574. However, this court held that the trial court erred in directing a verdict for the driver of the parked first vehicle, Mrs. Stamper. *Id.*

In explaining why the directed verdict was in error, the court held that the negligence of Mrs. Stamper in partially blocking the road was not superseded by the negligence of the driver of the third vehicle, Atkinson, who failed to stop in time to avoid collision with the second vehicle. *Id.* at 576. In supporting this holding, the court explained that there existed two lines of cases:

> This conclusion is supported by a line of cases in which it was held that the negligence of one in obstructing the highway by a standing vehicle was not superseded by the negligence of another in running into such vehicle.

> There is, however, another line of cases in which it was held that the negligence of one obstructing the highway by a standing vehicle was superseded by another's negligence in running into such vehicle, and that the latter's negligence was the proximate cause of the accident.

- 7 -

The test of whether a case falls within one line or the other of these cases seems to be this: Did the driver running into the standing vehicle *see it in time* to enable him, by use of due care, to avoid the collision? *If he did not,* his negligence is merely a contributory cause; *if he did,* his negligence is the proximate cause.

*Id.* at 575-76 (internal citations omitted and emphasis added).

In further explaining the difference between the two lines of cases, the *Carney* Court quoted extensively from the Pennsylvania Supreme Court:

Where a second actor *has become aware of the existence of a potential danger created by the negligence of an original tort-feasor*, and thereafter, by an independent act of negligence, brings about the accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause

Where, however, the second actor *does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable,* the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties.

*Id.* at 576 (quoting *Kline v. Moyer*, 325 Pa. 357, 364 (1937), *overruled by Grainy v. Campbell*, 493 Pa. 88 (1981))[5] (internal citations omitted and emphasis added).

Based on this differentiation between the two lines of cases, the *Carney* Court concluded that Atkinson, the driver of the third vehicle, "did not *become apprised* of the two vehicles obstructing his path until his own negligence, added to that of the existing perilous condition, made the collision inevitable; and therefore, his negligence was only a contributing factor, but not a superseding cause and did not relieve Mrs. Stamper [the driver of the first car] of liability for her negligence; or so the jury might have found." *Id.* (emphasis added). Thus, the negligence of Mrs. Stamper, the driver of the first vehicle, was still potentially a proximate cause of the injury to the passenger in the third vehicle, despite the fact that Atkinson, the driver of the third vehicle, drove into the stationary second vehicle due to inattention. *Id.* Atkinson did not actually see the stationary vehicle

---

[5] *Grainy* overruled *Kline* finding it a "restrictive approach" and adopted a test under which even if the second negligent actor becomes apprised of the dangerous condition caused by the first negligent actor and could have avoided causing injury liability may still potentially attach to the first negligent actor. *Grainy*, 493 Pa. at 94. The *Grainy* Court indicated that this "result is fair and reasonable because the first actor was, in fact, negligent." *Id.*

- 8 -

until it was too late to prevent the accident, thus his negligence was not a superseding cause breaking the line of proximate cause between Mrs. Stamper's negligent parking and the plaintiff's injuries. *Id.*

IV.

Turning to the federal precedent, in *Kellner v. Budget Car and Truck Rental Inc.,* the United States Court of Appeals for the Sixth Circuit had occasion to apply the *Carney* decision to a case involving a motor vehicle accident on a Tennessee interstate. *Kellner,* 359 F.3d at 401-03. In that case, a tractor-trailer experienced mechanical problems and became disabled. *Id.* at 401. The driver, Christopher Zaffer, was able to pull completely into the break down lane, "with no portion of the rig protruding or overlapping into the travel lanes on the interstate." *Id.* The court further explained the conditions before the accident:

> Zaffer placed the orange-triangle warning devices required by Tennessee statute and federal regulation behind the tractor-trailer to signal to approaching traffic that his rig was disabled. The weather conditions were clear and the roadway was dry. The section of I-40 on which Zaffer's rig became disabled provided three lanes for motorists traveling either east or west. According to record testimony, the tractor-trailer could be seen by approaching west-bound motorists from a distance of at least 1,000 feet.

*Id.* at 402. Sometime after the tractor-trailer was parked in the breakdown lane, Zaffer was working under the vehicle when the driver of a Ford Truck, Diane Rupe, for unknown reasons "left the far right travel lane of traffic, moved into the emergency lane, and collided with [the] parked tractor-trailer." *Id.* As a result of the crash, Zaffer, Rupe, and one of her passengers, her minor grandson Michael Kellner, were all killed. *Id.* Another minor grandson, Shawn June, who was also a passenger, survived but sustained serious injuries. *Id.*

The parents of the grandsons brought suit in the United States District Court for the Eastern District of Tennessee against various parties, including the estate of Zaffer, and two trucking companies who had a business arrangement with Zaffer in relation to the load he was transporting at the time of the accident. *Id.* The district court granted these defendants' motion for summary judgment concluding that, although a reasonable jury could conclude that Zaffer had breached his duty by not moving his rig to a safer location, as matter of law, Zaffer's actions were not the proximate cause of the injuries to the grandchildren. *Id.* at 403. The district court reasoned that given the conditions on the day of the accident "a reasonable jury would have to conclude that Rupe *could see* the rig prior to the accident" and therefore Rupe's actions were the proximate cause of the injury. *Id.* (emphasis added).

In so holding, the district court relied on *Carney*, reasoning that although the

"general rule in Tennessee [is] that the foreseeability of an intervening, superseding act presents a jury question"; nevertheless, "Tennessee [has] adopted a special rule about proximate causation in standing vehicle cases such as the present one." *Id.* at 403-04. The district court understood *Carney* to stand for the proposition that "[t]he operator of a vehicle that crashes into a vehicle negligently left standing in an unsuitable stopping place provides the proximate cause of any resulting injuries if she *could see* the standing vehicle in time to avoid the collision." *Id.* at 404 (emphasis added). The district court concluded that pursuant to *Carney* "it is unforeseeable as a matter of law someone would drive into a plainly visible standing vehicle." *Id.*

The Sixth Circuit upheld the grant of summary judgment on two grounds. *Id.* at 404-05. The Sixth Circuit explained that the District Court erred in its determination that a reasonable jury could conclude that Zaffer had breached his duty of care. *Id.* On the contrary, the Sixth Circuit held that, as a matter of law, the manner in which Zaffer parked in the breakdown lane was not a breach of duty. *Id.*

Although the lack of breach was dispositive of the case, the Sixth Circuit also examined proximate cause and concluded that "consonant with the district court's determination, defendants' actions were not the proximate cause of the plaintiffs' injuries." *Id.* at 406. In so concluding, the Sixth Circuit explained: "[P]ursuant to *Carney*, the State [of Tennessee] had adopted a *specific* rule for determining proximate cause and foreseeability in claims involving standing vehicles, such as the instant case." *Id.* at 407 (emphasis in the original). Applying this special rule, the Sixth Circuit concluded that "it was not foreseeable, within the meaning of Tennessee law, that Rupe, with an extended unobstructed view of Zaffer's tractor-trailer, would leave three travel lanes of interstate and strike the rig that was parked completely within the emergency breakdown lane." *Id.*

Three subsequent U.S. District Court cases out of Tennessee, all citing and following the Sixth Circuit's understanding of Tennessee law articulated in *Kellner*, have applied the "special rule" of *Carney* in finding a lack of proximate cause in stationary vehicle cases.

In *Underwood v. Fitzgerald*, an officer stopped her police vehicle on the side of the road to render aid to a motorist with a flat tire. *Underwood*, 2005 WL 2837388, at *1. A fully loaded tractor-trailer crashed into the parked patrol car, killing the officer and severely injuring the motorist. *Id.* The parents of the officer brought suit against the driver and the owner of the rig. *Id.* In response, the defendants asserted the affirmative defense of comparative fault, and the plaintiffs moved for partial summary judgment on this affirmative defense. *Id.* In granting the partial summary judgment, the district court held that any negligence on the part of the officer was superseded by the negligence of the tractor-trailer driver. *Id.* at *3. Quoting *Kellner* and referencing Tennessee's "special rule about proximate causation in standing vehicle cases," the district court explained that

under *Carney* "the operator of a vehicle that crashes into a vehicle negligently left standing in an unsuitable stopping place provides the proximate cause of any resulting injuries if the operator *could see* the standing vehicle in time to avoid a collision." *Id.* (internal citations omitted and emphasis added). The court went on to hold that given it was "undisputed that nothing was obstructing [the tractor-trailer driver's] vision of the police car on this clear dry day and that [the officer's] car had emergency flashers on[,]" "[n]o reasonable jury could find that [the tractor-trailer driver] *could not have seen* [the officer's] car." *Id.* And, therefore, "[n]o reasonable jury could find that the conduct of [the officer] was the proximate cause of this wreck." *Id.* (emphasis added).

In *Humphrey v. Yobonta*, an intoxicated driver was killed when he crashed his car into the back of a vehicle with a trailer in tow parked fully on the shoulder of an entrance ramp of I-24. *Humphrey*, 2021 WL 780731, at *1. The deceased driver's estate brought suit against the driver of the parked vehicle, among others, and the defendant moved for summary judgment. *Id.* In its discussion of causation, the district court invoked *Kellner's* understanding of *Carney*:

> Though foreseeability of an intervening or superseding act usually presents a jury question, the *Carney* court adopted a special rule in standing vehicle cases, which the district court applied in *Kellner*, explaining that "'[u]nder this rule it is unforeseeable as a matter of law someone would drive into a plainly visible standing vehicle.' The *Carney* opinion noted that '[t]he operator of a vehicle that crashes into a vehicle negligently left standing in an unsuitable stopping place provides the proximate cause of any resulting injuries if she *could see* the standing vehicle in time to avoid a collision.'" *Kellner*, 359 F.3d at 404 (quoting from and discussing the district court opinion).

*Id.* at *5 (emphasis added).

Applying this understanding of *Carney* and analogizing to *Kellner*, the district court held: "Like *Kellner*, Defendants have shown the Court undisputed facts that the deceased could plainly see the rig (*i.e.* the rig was plainly visible to a driver approaching the rig) before impact and the deceased crossed multiple lanes of traffic, a safety zone, and an entrance ramp lane before colliding with the trailer on the shoulder." *Id.* at *6. In a footnote, the court noted that

> Plaintiff disputes this, calling it "pure speculation" and claiming that "[w]e cannot purport to know what was 'clearly visible' to the [deceased] because he is no longer here." Plaintiff's position here is without merit. It may be that we do not know what the deceased actually saw (especially in his inebriated state). But we can, on the current record, determine what the deceased *could* have seen, *i.e.* determine what was able to be seen, *i.e.*

- 11 -

determine what was *visible*.  And that is what matters in this context.

*Id.* at *6, n.8 (emphasis in original) (internal citations omitted).

In *Hamrick v. James*, the most recent federal case relying on *Kellner*, three tractor-trailers were involved in an accident.  *Hamrick*, 599 F.3d at 722-23.  The first truck, driven by Reginald James for Nandleen, LLC, parked fully on the shoulder of the road due to the driver feeling ill.  *Id.* at 722.  Upon parking, James put on his hazard lights, but did not put out safety triangles, even though, as he admitted in record testimony, "there was no reason he could not have put the triangles out."  *Id.* at 722, n.3.  Soon after James parked his truck, a second truck, driven by Ahmed Elmehalawy for Splash Transport, Inc., was traveling in the far-right lane preparing to take the next exit.  *Id.* at 723.  Elmehalawy mistakenly believed that James's truck was still moving in an active lane of traffic, and thus began to drift into the emergency lane.  *Id.*  He realized his mistake too late to fully avoid hitting the stationary truck.  *Id.*  Although Elmehalawy was able to pull his truck back into an active lane, he damaged the stationary truck in doing so.  *Id.*  Meanwhile, a third truck, driven by Grant Hamrick for United Parcel Service, Inc., had noticed James's truck on the shoulder and had moved to the middle lane to give the truck adequate space.  *Id.*  As Elmehalawy was pulling left in his unsuccessful attempt to avoid hitting the stationary truck, he also struck Hamrick's truck as it was travelling in the middle lane, causing both trucks to jack-knife.  *Id.*

Hamrick filed suit against, among others, the driver and the owner of the stationary truck, James and Nandleen.  *Id.*  These defendants moved for partial summary judgment on the theory that James's actions in parking his rig in the breakdown lane were not the proximate cause of the injuries to Hamrick.  *Id.* at 724.  In granting their motion, the district court cited to *Carney* for the proposition that "The Tennessee Supreme Court has adopted special rules of proximate causation involving stationary vehicles."  *Id.*  The court went on to explain that "The Sixth Circuit applied *Carney* in *Kellner*" and also concluded that "*Kellner* controls" in the case at bar.  *Id.* at 725, 726.  The defendants attempted to distinguish *Kellner* on the ground that, unlike in *Kellner*, it was undisputed in their case that James had not placed any safety triangles behind his rig.  *Id.* at 725.  The court rejected this distinction, explaining:

Elmehalawy saw James's rig from a distance.  He hit James's rig not due to poor visibility, but rather flawed asserted perception that James's tractor-trailer was moving in a separate lane of traffic.  Elmehalawy, had he realized that James's rig was stationary, would not have attempted to merge rightward and the accident would not have occurred.  Hamrick testified that it was readily apparent that James's rig was stationary.
…
It is undisputed that both Hamrick and Elmehalawy saw James's rig.  Elmehalawy simply made an error as to whether the tractor-trailer was

moving. Nevertheless, he could have prevented the collision if he had correctly concluded that the vehicle was not moving.

*Hamrick*, 599 F.Supp.3d at 725-26 (internal citations omitted).

V.

Turning back to the present case, the trial court accepted *Kellner* and its federal court progeny's reading of *Carney*. However, *Kellner* does not accurately reflect the holding in *Carney*, and that mistaken understanding of *Carney* has propagated itself through subsequent federal district court cases that rely on *Kellner*. In the three-car accident at issue in *Carney*, the court held that the negligence of the third car in hitting the second car did not supersede the negligence of the first car in parking in the road. *Carney*, 270 S.W.2d at 576. This was so, because the driver of the third car had been looking down while driving, and then at the point he looked back up and saw the second car stopped and became apprised of the danger posed, he could not stop in time to avoid the collision. *Id.* at 574, 576. As the *Carney* court explained, the driver of the third car "did not become apprised" of the second car standing in front of him and the danger posed thereby "until his own negligence," not looking at the road, "made the collision inevitable." *Id.* at 576.

In explaining its conclusion, as noted above, the *Carney* Court expressly stated the following:

> This conclusion is supported by a line of cases in which it was held that the negligence of one in obstructing the highway by a standing vehicle was not superseded by the negligence of another in running into such vehicle.
>
> There is, however, another line of cases in which it was held that the negligence of one obstructing the highway by a standing vehicle was superseded by another's negligence in running into such vehicle, and that the latter's negligence was the proximate cause of the accident.
>
> The test of whether a case falls within one line or the other of these cases seems to be this: Did the driver running into the standing vehicle *see it in time* to enable him, by use of due care, to avoid the collision? *If he did not*, his negligence is merely a contributory cause; *if he did*, his negligence is the proximate cause.

*Id.* at 575-76 (internal citations omitted and emphasis added). In support of its conclusion, again as noted above, the *Carney* Court quoted extensively from the Pennsylvania Supreme Court:

Where a second actor *has become aware* of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about the accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause.

Where, however, the second actor *does not become apprised* of such danger *until his own negligence, added to that of the existing perilous condition, has made the accident inevitable,* the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties.

*Id.* at 576 (quoting *Kline*, 325 Pa. 357 at 365) (internal citations omitted and emphasis added).

The federal courts' understanding of *Carney* reads the decision in a manner that renders the degree of negligence of the driver of the parked vehicle immaterial. In other words, irrespective of how close to the road it is parked, how long the vehicle has been stopped in that location, how poorly marked the vehicle, why the vehicle was parked in the location, and so on, all such circumstances become irrelevant if the parked vehicle *could have been seen* and *could have been avoided* by the driver who hit the parked vehicle along the road. Under the federal courts' understanding of the *Carney* decision, any potential liability for the driver of the parked vehicle is washed away by this potential to see and potential to avoid the parked vehicle. Respectfully, this simply is not what *Carney* provides for in its analysis. In fact, under the *Carney* rule, as understood by the federal courts, the result of *Carney* itself would have been the opposite of the conclusion reached in the *Carney* case. If Atkinson the driver of the third vehicle in *Carney* had not been looking down or away and instead had been looking at the road, he could have seen the vehicle stopped ahead and avoided the accident. Nevertheless, Mr. Atkinson's negligence did not relieve Mrs. Stamper, the driver of the parked vehicle, of her liability for the accident because Mr. Atkinson did not actually see the vehicle until it was too late to avoid the accident. Thus, under *Carney,* they both contributed to the accident, rather than Ms. Stamper being relieved of any liability.

Ultimately, *Kellner* and its progeny have deviated from *Carney's* holding in at least two ways. These federal cases focus on what *could* have been seen by the second tort-feasor, and they dispense with the temporal focus on the second actor's *point of awareness of the danger* posed by the first actor's negligence. Thus, these federal cases come to the conclusion that it is immaterial when considering proximate cause in accordance with *Carney* whether and at what point the second tort-feasor became aware of the danger posed by the standing vehicle.[6] Respectfully, this is simply not a correct

---

[6] It may be that in cases in which there is no way to ascertain if and when the second tort-feasor

- 14 -

understanding of *Carney*.

It is this misunderstanding of *Carney* that the trial court in the instant case relied upon in error.[7] In this case for purposes of summary judgment, it is undisputed that Mr. I., due to the distraction caused by the bee, did not actually see Mr. Jones's tractor-trailer until the last moment before the impact, at which point it was too late for him to avoid collision. But the trial court, following *Kellner* and its progeny, treated this fact as immaterial, instead focusing on what Mr. I. could have potentially seen if his attention was not diverted. *Carney* is concerned with what the driver, though acting negligently, *actually saw*, not what *potentially could have been seen* if he or she was not acting negligently. Accordingly, the specific rule as to standing vehicles that may be taken from *Carney* is when a vehicle driver *actually sees* a standing vehicle and becomes apprised of the danger posed thereby "in time to enable him, by use of due care to avoid the collision," if he nonetheless hits the car, his negligence becomes a superseding cause and thus there is no proximate cause between any negligence on the part of the driver of the standing car and the ultimate injury. *Id.* at 576.[8]

---

became aware of the danger of the standing vehicle, as in cases in which the second tort-feasor dies in the accident, an assumption as to what must have been seen by the unavailable tort-feasor may be justified. But an assumption as to what was actually seen and the time when it must have been seen is distinct from asserting the *immateriality* of these facts. Regardless, such circumstances are not applicable in the present case where the parties agree that Mr. I. did not see the parked tractor-trailer until it was too late to avoid the accident, that he did not see the tractor-trailer because of a bee that had flown into his vehicle, and that he would have stopped if he had seen it.

[7] An erroneous reading of *Carney* may be even more problematic under Tennessee's modified comparative fault regime. Under Tennessee's modified comparative fault regime, the Tennessee Supreme Court has noted that "a plaintiff may 'recover so long as plaintiff's fault is less than the combined fault of all tortfeasors.'" *Binns v. Trader Joe's E., Inc.*, 690 S.W.3d 241, 249 (Tenn. 2024) (quoting *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992)). The Tennessee Supreme Court has indicated that one of the core principles of Tennessee's shift from contributory negligence to comparative fault is that "when 'the separate, independent negligent acts of more than one tortfeasor combine to cause a single, indivisible injury, each tortfeasor will be liable only for that proportion of the damages attributed to its fault.'" *Banks v. Elks Club Pride of Tennessee 1102*, 301 S.W.3d 214, 220 (Tenn. 2010).

[8] *Hamrick*, the most recent federal case, presents a different situation than the other three federal cases. As the district court explained, "It [was] undisputed that …[the second tort-feasor,] Elmehalawy[,] saw James's rig. Elmehalawy simply made an error as to whether the tractor-trailer was moving. Nevertheless, he could have prevented the collision if he had correctly concluded that the vehicle was not moving." *See Hamrick*, 599 F.Supp.3d at 725-26. Thus, in *Harmrick* the court did focus on what was actually, as opposed to potentially, seen by the second tort-feasor. It was undisputed in *Hamrick* that the first tort-feasor, the driver of the parked vehicle, did not place safety triangles behind his vehicle. *Id*. at 722, n. 3. The district court did not address whether the placement of such triangles is helpful in alerting other drivers that a truck is parked on the side of the road, helping to obviate any misperception that such a vehicle is moving. The district court instead applied its understanding of the *Carney* Rule that because the truck had been seen and the driver of the second vehicle could have stopped, liability was precluded on the facts of the case. It is unnecessary for us to consider the applicability of *Carney* where a driver actually sees the vehicle but does not see that it is stopped and does not become apprised of the danger

Our decision is extremely narrow in scope. Here, the trial court made clear that its understanding of *Carney* provided the singular basis for its ruling, asserting whether the federal courts' interpretation of *Carney* was incorrect or correct was the "critical issue" and "[u]ltimately, [] what the case amounts to."[9] Our decision is simply that the erroneous understanding of *Carney* upon which the trial court indicated its decision turned cannot be the basis for the grant of summary judgment. Applying Tennessee tort law, the parties may well still make arguments contesting whether this case should or should not be decided as a matter of law based upon conventional Tennessee tort law principles. Rather than wading into such waters without the trial court having gone before us, we think the better course is to remand this case to the trial court.[10]

VI.

For the aforementioned reasons, we reverse the judgment of the Circuit Court for Dickson County. Costs of this appeal are taxed to the appellees, Bryan Truck Line, Inc. and James D. Jones, for which execution may issue if necessary. The case is remanded for further proceedings consistent with this opinion.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE

---

posed thereby and instead mistakenly believes the vehicle is moving in a lane of traffic rather than stopped.

[9] The trial court noted in its opinion: "While Plaintiffs have raised a variety of arguments regarding whether Moving Defendants breached their duty of reasonable care, those issues are unnecessary to consider in light of the Court's holding."

[10] We note that in their briefing before this court, the appellant also argued that various disputes of fact including a dispute about the curvature of the road and whether the sun was shining in Mr. I.'s eyes during the accident are material facts negating summary judgment. The appellee's brief, referring to these facts, appears to concede "the foregoing facts may be in dispute" but argues they are not material, pointing to the federal courts' erroneous understanding of *Carney* regarding what "could" be seen. Putting this erroneous understanding of *Carney* aside, a complicating factor in any analysis of material disputed facts is the interplay of the parties' assertions regarding factual disputes and Tennessee Rule of Civil Procedure 56.03, which requires a moving party to submit "a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial" with "specific citation[s] to the record," and which likewise requires the non-moving party to file a response demonstrating a fact is in dispute with specific citation to the record. Tenn. R. Civ. P. 56.03. If a non-moving party does not adequately comply with this rule, the court may exercise its discretion to "refus[e] to consider the factual contentions of the non-moving party, even though these facts could be ascertained from the record." *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn Ct. App. 2001). The trial court did not have occasion to engage with a 56.03 analysis in relation to the parties' statements of undisputed facts and responses thereto because the erroneous reliance on *Carney* preempted the need for such an inquiry.